| | |
|---|---|
| Marquett Martin d/b/a Blazing 7's Skill Game & Fish, and Blazing 7's Skill Game and Fish Table, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>Nautilus Insurance Company,<br><br>        Defendant. | 1:20CV858 |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiffs Marquett Martin d/b/a Blazing 7's Skill Game & Fish ("Martin") and Blazing 7's Skill Game and Fish Table, LLC ("Blazing 7's") bring this action against Defendant Nautilus Insurance Company, alleging breach of contract and unfair and deceptive trade practices. (ECF No. 11 ¶¶ 14–32.) Specifically, Plaintiffs allege that Defendant did not pay their claim when an insured building was burglarized and destroyed by fire. (*Id.* ¶ 13.) Before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 12.) For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

I. **BACKGROUND**[1]

The First Amended Complaint alleges that Defendant Nautilus issued to Plaintiffs an insurance policy ("the Policy") covering Plaintiffs' commercial property and business personal

---

[1] When considering a motion to dismiss, the court accepts as true all well-pleaded allegations in the complaint and views the complaint and any attached exhibits to it in the light most favorable to the plaintiff. *See Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Fayetteville Invs. v. Com.*

property located in Eden, North Carolina. (ECF No. 11 ¶ 4). The Policy included, among other provisions, a "Burglary and Robbery Protective Safeguards Endorsement," which had a clause that mandated the Property maintain a burglary alarm. (*Id.* ¶ 11.)

During the Policy's term of coverage, on or about October 6, 2019, the Property was burglarized. (*Id.* ¶¶ 7–8.) Following the burglary, that same day, the Property was destroyed by fire. (*Id.* ¶ 8.) Soon thereafter, Plaintiffs notified Defendant that they had suffered a covered loss under the Policy. (*Id.* ¶ 10.) After investigating the claim, Defendant determined that the Property did not have a burglary alarm as required by the policy at the time of the loss. (*Id.* ¶ 11.) Defendant subsequently denied the claim. (*Id.*)

While Plaintiffs conceded that the Property did not have a burglary alarm, they argued that this failure only precluded coverage for stolen items and did not affect their claim, which they characterized as one for fire damage. (*Id.* ¶ 12.) Nevertheless, Defendant continued to refuse coverage. (*Id.* ¶ 13.)

Plaintiffs began this action in state court and Defendant removed it to this Court on the basis of diversity on August 20, 2020. (ECF No. 1.) On September 18, 2020, Plaintiffs filed the First Amended Complaint which contains the two claims outlined above. (ECF No. 11.) Defendant Nautilus now moves to dismiss Plaintiff Martin from this lawsuit and to dismiss the unfair and deceptive trade practices claim. (ECF No. 13 at 19–20.)

## II. STANDARD OF REVIEW

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard under Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short

---

*Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The court "view[s] the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a motion to dismiss, "a [district] court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

## III. DISCUSSION

Under North Carolina law,[2] an insurance policy is a contract, and its terms govern the parties' rights and duties. *Fidelity Bankers Life Ins. Co. v. Dortch*, 348 S.E.2d 794, 796 (N.C. 1986). Here, Defendant argues that Plaintiff Martin is not named as an insured in the Policy (i.e., is neither a party to the contract of insurance nor a beneficiary of it), and therefore cannot bring any action based on it and should be dismissed entirely from this suit. (ECF No. 13 at 18–19.) Furthermore, Defendant argues that Plaintiffs have not stated a claim for unfair and deceptive trade practices. (*Id.* at 6–18.)

---

[2] "[North Carolina law] mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000). The Policy indicates it was delivered in North Carolina. (ECF No. 11-1 at 4.)

3

### A. Defendant Has Failed to Show That Plaintiff Martin d/b/a Blazing 7's Skill Game & Fish Is Not a Proper Party to This Action

Defendant argues that the allegations in Plaintiffs' Complaint are incorrect insofar as they claim that both Plaintiff Blazing 7's and Plaintiff Martin are insured under the Policy. (*See* ECF No. 13 at 18–19). Defendant claims that the Policy was originally issued to Plaintiff Martin, but the parties amended the Policy by endorsement shortly after it was issued to substitute Plaintiff Blazing 7's as the sole insured. (*Id.*) To support its argument, Defendant does not rely on the Policy that Plaintiffs attached to the Complaint; rather, Defendant relies on a different version of the Policy that it has attached to its brief in support of its motion. (*Compare* ECF No. 11-1, *with* ECF No. 13-1.) Consistent with Defendant's contentions, Defendant's version has endorsements in its final pages that amend the contract to replace Plaintiff Martin with Plaintiff Blazing 7's so that Plaintiff Blazing 7's (and only Plaintiff Blazing 7's) is the insured. (ECF No. 13-1 at 92–94.) These final pages are not in Plaintiffs' version, which names Plaintiff Martin (and only Plaintiff Martin) as the insured. (ECF No. 11-1 at 4.)

"[C]onsideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, the fact that the two versions of the Policy contradict one another presents a glaring authenticity issue. Nevertheless, Defendant claims that Plaintiffs do not dispute the authenticity of Defendant's version and therefore the Court should treat Defendant's version of the Policy as superseding the version attached to the Complaint. (ECF No. 16 at 8.) Plaintiffs' brief, however, contains no concession on this point. (*See* ECF No. 15 at 7–8.) Instead, Plaintiffs insist that Plaintiff Martin should not be

4

Case 1:20-cv-00858-LCB-JEP   Document 18   Filed 09/19/22   Page 4 of 13

dismissed, and that the document they attached to the Complaint is a copy of what Defendant sent them after they reported their claim. (*Id.* at 8.) The Court construes this as disputing which document is the operative Policy. Accordingly, the striking discrepancy between these two documents prevents the Court from considering Defendant's copy.[3]

At this stage of the proceeding the Court is required to view the facts as alleged in the Complaint as true, and to resolve all inferences in the light most favorable to the nonmoving party. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. This Court's role at this juncture is not to resolve disputed evidence. The Court will therefore deny Defendant's motion to the extent that it seeks dismissal of Plaintiff Martin from this lawsuit.

**B. Plaintiffs Plausibly Alleged That Defendant Committed an Unfair and Deceptive Act by Offering an Unreasonable Explanation of Its Denial**

Defendant next moves to dismiss the unfair and deceptive trade practices claim brought pursuant to N.C. Gen. Stat. § 75-1.1 and N.C. Gen. Stat. § 58-63-15(11). (ECF No. 11 ¶¶ 23–32.)

Under § 75-1.1, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To establish a violation of § 75-1.1, "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000). A related statute, § 75-16 provides a right of action to any person injured by any violation of § 75-1.1. In addition, under § 75-16, a prevailing plaintiff can recover treble damages.

---

[3] Defendant argues that under either version of the Policy there should only be one plaintiff, not two, in this lawsuit. (ECF No. 16 at 9.) Because Defendant has only moved to dismiss Plaintiff Martin, the Court will not address whether Plaintiff Blazing 7's is a proper plaintiff here.

5

In the insurance context, one way a plaintiff-insured may pursue a § 75-1.1 claim against a defendant-insurer is by showing the insurer committed an unlawful act enumerated in § 58-63-15(11), which is part of North Carolina's Insurance Law. *Gray*, 529 S.E.2d at 681–83. "Conduct that violates § 58-63-15(11) constitutes a violation of [§ 75-1.1] as a matter of law." *DENC, LLC v. Phila. Indem. Ins. Co.*, 32 F.4th 38, 50 (4th Cir. 2022) (quoting *Elliot v. Am States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018)); *Buchanan v. N.C. Farm Bureau Mut. Ins. Co.*, 841 S.E.2d 598, 604 (N.C. Ct. App. 2020) ("A violation of N.C. Gen. Stat. § 58-63-15 constitutes a violation of N.C. Gen. Stat. § 75-1.1."). Showing a § 58-63-15(11) violation is not the exclusive means by which an insured can pursue its insurer under § 75-1.1. A plaintiff may also prevail by showing a breach of contract "accompanied by 'egregious or aggravating circumstances.'" *Davis v. State Farm Life Ins. Co.*, 163 F. Supp. 3d 299, 307 (E.D.N.C. 2016) (quoting *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012)); *see also Modern Auto. Network, LLC v. E. All. Ins. Grp.*, No. 17CV152, 2018 WL 1474362, at *6 (M.D.N.C. Mar. 26, 2018) (citing *Griffith v. Glen Wood Co., Inc.*, 646 S.E.2d 550, 558 (N.C. Ct. App. 2007)). Such circumstances are, for example, "forged documents, lies, and fraudulent inducements," though cases presenting these circumstances are "rare." *Davis*, 163 F. Supp. 3d at 307.

Here, Plaintiffs have specifically alleged that Defendant violated § 75-1.1 by violating subsections (a), (f), and (n) of § 58-63-15(11). (ECF No. 11 ¶¶ 23–32.) For each subsection, the Complaint lists specific acts allegedly committed by Defendant that Plaintiffs contend violate the Insurance Law. (*Id.* ¶ 28.) The Court will address each of these subsections in

turn. The Court concludes that Plaintiffs have plausibly alleged a violation of § 58-63-15(11)(n)—but not any of the other predicates set out in the Complaint.[4]

### 1. Plaintiffs Have Failed to Plausibly Alleged Defendant Violated Subsection (a)

An insurer violates § 58-63-15(11)(a) if it "[m]isrepresent[s] pertinent facts or insurance policy provisions relating to coverages at issue." "Although North Carolina's courts have not [extensively] analyzed subparagraph (a) or defined misrepresentation in this context, '[i]n making a claim of unfair and deceptive trade practices on a theory of misrepresentation or fraud, a plaintiff must show that a defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception.'" *Essentia Ins. Co. v. Stephens*, 530 F. Supp. 3d 582, 606 (E.D.N.C. 2021) (quoting *Hospira Inc. v. Alphagary Corp.*, 671 S.E.2d 7, 12 (N.C. Ct. App. 2009)).

Plaintiffs have identified four actions they contend are violations of this subsection. One of those actions is Defendant "[r]emitting payment of $10,000.00 . . . as an initial payment towards the business personal property damaged by fire causing Plaintiffs to reasonably believe that fire damage would be covered." (ECF No. 11 ¶ 28(a)(i).) The other three actions relate to communications in which Defendant somehow conceded that the claim involved "fire," but, at the same time, insisted that the burglary alarm provision barred coverage. (ECF No. 11 ¶ 28(a)(ii)–(iv).)

Defendant argues these allegations "fail to provide any indication as to what facts and/or specific Policy language [Defendant] allegedly misrepresented." (ECF No. 13 at 11.) Plaintiffs respond that the Complaint makes it clear that "the Policy's Burglary and Robbery

---

[4] To the extent that Plaintiffs argue that Defendants conduct was "substantial and aggravating" irrespective of whether there was a violation § 58-63-15(11), Plaintiffs' Complaint does not allege such claim. (*See* ECF No. 15 at 4–7.)

7

Protective Safeguards endorsement is the provision Plaintiffs contend were used as a vehicle of Defendant's misrepresentation—as nothing in this endorsement speaks to a loss resulting from arson or fire but only theft or robbery." (ECF No. 15 at 6.)

The Court agrees with Defendant that that Plaintiffs have not plausibly alleged that Defendant made any misrepresentation of any underlying fact or policy term. The allegations describe only a dispute over Defendant's conclusion about how to interpret and apply the terms of the Policy under the circumstances. Such conduct does not violate § 58-63-15(11)(a). *See Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 F. App'x 225, 233 (4th Cir. 2001) (unpublished) ("[A] reasonable, non-negligent misunderstanding regarding a policy term is insufficient to ground an UDTPA claim." (citing *Cockman v. White*, 333 S.E.2d 54, 55 (N.C. Ct. App. 1985)). Defendant's motion will be granted as to § 58-63-15(11)(a).

2. <u>Plaintiffs Have Failed to Plausibly Alleged Defendant Violated Subsection (f)</u>

An insurer violates § 58-63-15(11)(f) when it "[does n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." With respect to this subsection, "advocating a position that is ultimately determined to be incorrect does not necessarily demonstrate a lack of good faith in attempting to settle a claim." *Cent. Carolina Bank & Tr. Co. v. Sec. Life of Denver Ins. Co.*, 247 F. Supp. 2d 791, 801 (M.D.N.C. 2003). "[W]here an insurer 'ha[s] reasonable bases to challenge the validity of [the insured's] claims,' subparagraph (f) is not applicable." *Essentia Ins. Co.*, 530 F. Supp. 3d at 608 (quoting *Topsail Reef*, 11 F. App'x at 234).

For subsection (f), the actions that Plaintiffs identify as violations of that subsection are very similar to those identified for subsection (a)—essentially, Defendant relied on the burglary alarm requirement in the Policy to deny coverage related to fire. (ECF No. 11 ¶

8

28(b)(i)–(ii).) In the Complaint, Plaintiff alleges that "Defendant asserted no fire coverage existed under the Policy by pointing to policy language specific to theft coverage," and it "should have been reasonably clear to Defendant" that it had to pay the claim because there was "no exclusion or bar for fire damage in the Policy." (*Id.* ¶ 28(b)(ii).)

Defendant argues that the allegations in the Complaint describe a reasonable ongoing dispute about coverage and therefore do not satisfy the statute's requirement that "liability ha[ve] become reasonably clear." (ECF No. 13 at 12.) Plaintiffs respond that that it was clear the claim was for fire damage, and that the Policy covered fire damage. (*See* ECF No. 15 at 6–7.)

The Court finds that Plaintiffs' allegations do not allege lack of good faith. As the Complaint makes clear, the situation at the Property was more complicated than just an accidental fire—the Property was apparently "the target of a burglary and arson." (ECF No. 11 at 1; *see also id.* at 2 (mentioning Defendant had determined "the fire occurred during a theft").) The Complaint contains no allegation to support any inference that Defendant's application of a burglary alarm provision to a burglary/arson was anything but an honest disagreement over what happened at the Property and how the Policy applied. Similarly, the combination of a burglary alarm provision with the burglary/arson context makes Plaintiffs' conclusion that liability "should have been reasonably clear to Defendant" implausible.[5] The Court therefore finds that Plaintiffs have not plausibly alleged any violation of subsection (f) and Defendant's motion will be granted as to § 58-63-15(11)(f).

---

[5] For clarity, the Court is not indicating any opinion regarding ambiguity in the Policy, or the effect of the burglary alarm provision when a theft and fire occur simultaneously. The Court is only addressing a lack of clarity regarding events at the Property.

9

Case 1:20-cv-00858-LCB-JEP   Document 18   Filed 09/19/22   Page 9 of 13

### 3. Plaintiffs Have Plausibly Alleged Defendant Violated Subsection (n)

Although the allegations the Complaint uses to support a § 58-63-15(11)(n) violation are repetitive of the allegations the Complaint uses to support the subsections (a) and (f) violations, (*compare* ECF No. 11 ¶ 28(c)(i)–(iv), *with id.* ¶ 28(a), (b)), the Court's analysis with respect to subsection (n) is somewhat different. An insurer violates subsection (n) when it "fail[s] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Notably, this subsection does not focus on whether there was a reasonable basis for a denial, rather, it requires a "reasonable explanation." An insurer may not "hide the ball" or leave its insured to "connect the dots" by simply stating policy provisions and facts without "bridg[ing] the gap between policy and fact." *DENC*, 32 F.4th at 51–52.

Here, Defendant contends that the Complaint contains allegations that demonstrate Plaintiffs' understanding of Defendant's basis for denying coverage, and that this is an admission that Defendant did provide a reasonable explanation for its denial of Plaintiffs' claim. (ECF No. 13 at 14.) Specifically, Defendant highlights what it interprets as the Complaint alleging that Defendant communicated a causal link between the denial of coverage and the fact that the Property did not maintain a proper burglary alarm pursuant to the Burglary and Robbery Protective Safeguards Endorsement. (*Id.* (citing ECF No. 11 ¶ 11).) Construing the Complaint in the light most favorable to Plaintiff, the Complaint does not state that Defendant itself initially explained the denial was based on the lack of burglary alarm, or how the provision in the endorsement applied to the claim.[6] (ECF No. 11 ¶ 11 (describing a

---

[6] Elsewhere in the Complaint, Plaintiffs describe several written communications from Defendant about how Defendant was denying the claim while "using policy language related to a theft loss." (*E.g.*, ECF No. 11 ¶ 28(a)(ii), (iii).) In the light most favorable to Plaintiffs, these allegations do not amount to a concession that Defendant's explanation was reasonable.

sequence of events without causal language).) An insured's eventual understanding of which facts and which provisions an insurer relies on to deny coverage, and how the insurer has linked them together, does not necessarily prove the insurer reasonably explained the denial pursuant to § 58-63-15(11)(n). This is because, as the Fourth Circuit recently emphasized in *DENC, LLC v. Philadelphia Indemnity Insurance Company*, an insurer's duty to offer a reasonable explanation attaches "in the first instance." 32 F.4th at 51. The fact that someone coming to the issue during litigation can work out why a claim was denied does not excuse confusing communications from an insurer. *See id.*

*DENC* is additionally instructive here because some allegations in the Complaint parallel the situation in *DENC*. In *DENC*, the Fourth Circuit affirmed a district court's summary judgment finding that an insurer violated § 58-63-15(11)(n) "by first granting coverage and then denying it in a confusing letter." 32 F.4th at 50. That case began with a college party—partygoers in a student housing building gathered on a second-floor breezeway of the building and then began jumping, causing the breezeway to abruptly collapse. *Id.* at 43–44. When the insured owner of the building filed a claim for the collapsed breezeway with its insurer, the insurer "advised [the insured] that it would be investigating the claim under a reservation of rights," then "stated that it [would pay]," but then denied the claim "in a letter that failed to reference its earlier agreement to pay." *Id.* at 50. In that denial letter, the insurer took the position that the breezeway was damaged because of "long-term water intrusion and deteriorated wood framing." *Id.* (quoting J.A. at 442). However, although the letter listed many provisions that the insurer said barred coverage, none of them used the phrase "water intrusion," and, indeed, "some of the provisions set forth in the letter were not even part of the policy" and "[o]thers patently [didn't] apply to the breezeway collapse" and "even included

11

'the wrong provision governing collapse.'" *Id.* at 51 (quoting *DENC, LLC v. Phila. Ins. Co.*, 426 F. Supp. 3d 151, 156 (M.D.N.C. 2019)). Moreover, the letter "didn't explain (much less reasonably so) why the policy's operative Collapse Endorsement didn't cover the loss." *Id.* In this way, the insurer violated § 58-63-15(11)(n), which "requires that insurers do more than list all potentially applicable policy terms alongside the facts." *Id.*

Plaintiffs' Complaint here makes allegations in support of a subsection (n) violation that generally track *DENC*. According to the Complaint, shortly after Plaintiffs reported their claim, Defendant remitted a payment of $10,000 "as an initial payment towards the business personal property damaged by fire causing Plaintiffs to reasonably believe that fire damage would be covered." (ECF No. 11 ¶ 28(c)(i).) This parallels the *DENC* insurer's early statement that it would pay for the breezeway collapse, and the later retraction of that commitment. *DENC*, 32 F.4th at 50. Defendant then denied the claim in letters that "acknowledge[ed] Plaintiffs' fire loss but at the same time us[ed] policy language related to a theft loss." (ECF No. 11 ¶ 28(c)(ii).) This parallels the *DENC* insurer's switch to treating the claim as related to "water intrusion" and citation of provisions that did not relate to a collapse. *DENC*, 32 F.4th at 51. And Defendant here allegedly "fail[ed] to provide, cite, and/or address any policy language specific to fire coverage, or exclusions, that would bar Plaintiffs' recovery for damage caused by fire." (ECF No. 11 ¶ 28(c)(iv); *see also id.* ¶ 28(b)(ii) (alleging that the exclusion that Defendant relied on "only excludes loss or damage for theft").) Although the Complaint lacks allegations that match how the *DENC* insurer informed its insured that provisions that were not even in the policy barred coverage, the foregoing are sufficient to plausibly state a claim that Defendant did not reasonably explain why Plaintiffs' loss was not

12

covered as required by § 58-63-15(11)(n).[7]  Accordingly, Defendant's motion will denied as to § 58-63-15(11)(n).

## IV. CONCLUSION

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 12), is **GRANTED** in part and **DENIED** in part.  With Respect to the Unfair and Deceptive Trade Practices Claim Defendant's motion is granted as to the claims that Defendant violated N.C. Gen. Stat. § 75-1.1 by committing predicate violations of N.C. Gen. Stat. § 58-63-11(a) or (f); and is denied as to the claim that Defendant violated § 75-1.1 by committing a predicate violation of § 58-63-11(n.)  The motion is also denied to the extent that it seeks dismissal of Plaintiff Martin from the action.

This, the 19th day of September 2022.

/s/ Loretta C. Biggs

---

[7] The Court's analysis is based strictly on the allegations in the Complaint and does not reach any interpretation of the underlying letters or verbal communications referenced in the Complaint.