# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARQUETT MARTIN d/b/a/ )
BLAZING 7'S SKILL GAME AND FISH )
and BLAZING 7'S SKILL GAME AND )
FISH TABLE, LLC, )
 )
            Plaintiffs, )
 )
         v. )
 )
NAUTILUS INSURANCE COMPANY, )
 )
            Defendant. )
_____ )

        1:20CV858

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

     Plaintiffs Marquett Martin d/b/a Blazing 7's Skill Game and Fish Table, LLC and Blazing 7's Skill Game and Fish Table, LLC ("Blazing 7's") (collectively, "Plaintiffs") bring this action against Defendant Nautilus Insurance Company for breach of contract and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (ECF No. 11 ¶¶ 14–32.) Defendant also brings a counterclaim against Plaintiffs for unjust enrichment. (ECF No. 22 at 13.) Before the Court is Defendant's Motion for Summary Judgment on Plaintiffs' claims and Defendant's counterclaim. (ECF No. 43.) For the reasons that follow, Defendant's motion will be granted in part and denied in part.

## I.    BACKGROUND

     Blazing 7's is a North Carolina limited liability company doing business in the State of North Carolina with a principal office and principal place of business located in Eden, North

Carolina (the "Property"). (ECF No. 11 ¶¶ 2, 4.) Nautilus issued an insurance policy providing commercial property coverage for business personal property which is located at the Property for the policy period from October 25, 2018, to October 25, 2019. (ECF Nos. 11 ¶ 4; 11-1 at 4; 22-1 at 3; 33-1 at 4; 44-5 at 2.)

On or around October 6, 2019, the Property was burglarized; after the burglary, on the same day, the Property was destroyed by fire (collectively, the "Incident"). (ECF No. 11 ¶ 8.) Plaintiffs submitted a claim to Defendant, notifying Defendant that they suffered a loss that was covered by the Policy. (*See* ECF No. 49-6 at 2.) While Nautilus conducted its process of investigation for the claim, it issued a $10,000 check made payable by Defendant to Blazing 7's. (*See* ECF No. 49-7 at 2.) On October 31, 2019, Defendant issued a letter to Plaintiff Martin communicating that Nautilus was continuing its investigation under a reservation of rights. (ECF No. 44-3 at 2.) After Defendant completed its investigation of the claim, on December 5, 2019, it issued a letter denying Blazing 7's coverage for the claim (the "Denial Letter"). (*See generally* ECF No. 44-5.) In the Denial Letter, Defendant expressed that coverage was being denied to Blazing 7's because (1) Blazing 7's failed to comply with the condition of coverage set forth in Section A of the Burglary and Robbery Protective Safeguards Endorsement (the "Protective Safeguards Endorsement") requiring Blazing 7's to maintain the protective and/or security device shown in the schedule, and (2) coverage is precluded by the exclusion in the Protective Safeguards Endorsement for loss or damage caused by or resulting from theft if, prior to the theft, Blazing 7's failed to maintain the required protective safeguard. (*Id.* at 3–5.)

On August 10, 2020, Plaintiffs brought this action in state court, (ECF No. 1-1 at 2, 4), and Defendant removed it to this Court on the basis of diversity, (ECF No. 1). Plaintiffs filed

2

their First Amended Complaint on November 18, 2020, which included two claims: breach of contract and unfair and deceptive trade practices under the UDTPA. (ECF No. 11 ¶¶ 14–32.)

Defendant filed a motion to dismiss on December 2, 2020, seeking to dismiss Plaintiffs' UDTPA claim and to dismiss all of Plaintiff Martin's claims. (ECF Nos. 12; 13 at 18–20.) On September 19, 2022, the Court granted in part and denied in part Defendant's motion to dismiss. (ECF No. 18 at 13.) Regarding the UDTPA claim, Defendant's motion was granted as to the claims that Defendant violated N.C. Gen. Stat. § 75-1.1 by committing predicate violations of § 58-63-15(11)(a) or (f) and was denied as to the claim that Defendant violated § 75-1.1 by committing a predicate violation of § 58-63-15(11)(n). (*Id.*) The motion was also denied as to the dismissal of Plaintiff Martin from the action. (*Id.*) In addition, Defendant filed a counterclaim against Plaintiffs on grounds of unjust enrichment. (ECF No. 22 at 13.)

Thus, Plaintiffs' claim for breach of contract, the remainder of Plaintiffs' UDTPA claim asserting that Defendant violated N.C. Gen. Stat. § 75-1.1 and § 58-63-15(11)(n), and Defendant's counterclaim of unjust enrichment are the remaining claims to be addressed in this matter.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (citations and internal quotation marks omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d

3

266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

## III.    DISCUSSION

Under North Carolina law,[1] an insurance policy is a contract, and its terms govern the parties' rights and duties. *Fidelity Bankers Life Ins. Co. v. Dortch*, 348 S.E.2d 794, 796 (N.C. 1986). With respect to the insurance policy in question, Defendant raises a number of issues and

---

[1] "[North Carolina law] mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000). The insurance policy indicates it was delivered in North Carolina. (ECF Nos. 11-1 at 4; 22-1 at 3; 33-1 at 4.)

4

argues that it is entitled to summary judgment. Defendant argues that: (1) Plaintiff Martin is not entitled to coverage under the policy; (2) Plaintiffs are not covered by the policy due to their failure to comply with conditions set forth in the Protective Safeguards Endorsement; (3) Plaintiffs are not covered by the policy due to an exclusion in the Protective Safeguards Endorsement; (4) Defendant provided a prompt, reasonable explanation for the denial of Plaintiffs' coverage; and (5) Blazing 7's was unjustly enriched by Defendant's $10,000 payment. (*See generally* ECF No. 44.)

### A. Operative Version of Insurance Policy

As a threshold issue, during the course of these proceedings, Nautilus has presented three different versions of the insurance policy that it has contended governed the issues before the Court. (*See* ECF Nos. 11-1; 22-1; 33-1.) Plaintiffs argue that "[i]n light of the multiple policies produced by Defendant following the loss at issue in this case," there exist "genuine issues of material fact . . . as to which parties are covered under the applicable policy and as to whether said policy actually included the protective safeguard endorsement in question." (ECF No. 49 at 8.) The Court, however, finds that there is sufficient evidence in the record for this Court to determine the operative version of the policy.

The first version of the policy, which is attached to Plaintiffs' Amended Complaint, was presented to Plaintiffs by Defendant shortly after the loss of the Property. (*See* ECF No. 11-1.) It lists Plaintiff Martin as a named insured and includes a requirement for an Automatic Burglary Alarm in its Protective Safeguards Endorsement. (*See id.* at 3–4, 54.) The second version of the policy—which appears in various pleadings filed or served by Defendant—also lists Plaintiff Martin as a named insured, but its Protective Safeguards Endorsement schedule is blank and does not include any protective safeguard requirement. (*See* ECF No. 22-1 at 3,

5

57.) Finally, the third version of the policy includes a General Change Endorsement listing Blazing 7's as the only named insured and includes a requirement for an Automatic Burglary Alarm in its Protective Safeguards Endorsement. (*See* ECF Nos. 33-1 at 54, 94–95.)[2]

Defendant has presented sworn affidavit testimony from Tim Adamczyk, an Underwriting Manager for Nautilus, stating that the third version of the policy, (*id.*), is a "true and correct copy of the Policy," (ECF No. 33-2 at 1). However, there is record evidence to contradict this, as the record shows that Defendant stated in its Answer, Affirmative Defenses, and Counterclaim in response to Plaintiffs' Amended Complaint that the second version of the policy, (ECF No. 22-1), is the "true and correct copy of the Policy," (ECF No. 22 at 3, 10). Nonetheless, the record also reveals that Plaintiffs' original Complaint and Amended Complaint include allegations that state: "After conducting its investigation, Defendant's representatives determined the Property did not maintain a proper burglary alarm (as mandated in the Burglary and Robbery Protective Safeguards Endorsement included in the Policy) . . . ." (ECF Nos. 4 ¶ 11; 11 ¶ 11.) This suggests that Plaintiffs, in filing their Complaint and Amended Complaint, considered only a version of the insurance policy that includes a

---

[2] The Court notes that Defendant submitted a Motion to Substitute Exhibit to Correct Clerical Error before the Magistrate Judge, (ECF No. 32), contending that the copy of the insurance policy filed with the Notice of Removal, Motion to Dismiss, and the Answer, (ECF Nos. 1-2; 10-1; 13-1; 22-1), "inadvertently displayed blank fields as a result of a technical issue in the process of uploading it to file," (ECF No. 39 at 1; *see* ECF No. 33 at 2–4, 9). As a result, Defendant sought to "substitute that copy with a pdf copy of the Policy without those errors, showing the completed fields." (ECF No. 39 at 1; *see* ECF No. 32.) The Magistrate Judge granted Defendant's request to amend the Answer and the Notice of Removal "such that the originals remain[ed] as filed" but gave Defendant "leave to file an Amended Notice of Removal and Amended Answer and Counterclaims with the version of the Policy that it contends is correct." (*Id.* at 2.) The Magistrate Judge also made clear that "if there are any factual disputes as to which version of the Policy is correct, those disputes are preserved for future resolution." (*Id.*) Pursuant to the Order of the Court, Defendant filed an Amended Notice of Removal, (ECF No. 40), and an Amended Answer and Counterclaim, (ECF No. 41), attaching the version of the insurance policy that Defendant argues is the correct version, (ECF No. 41-1). The version of the policy that Defendant asserts is the correct version, filed at ECF No. 41-1, is the same as the version referenced in the text above as the third version of the policy. (*See* ECF No. 33-1.)

requirement for an Automatic Burglary Alarm in its Protective Safeguards Endorsement as the operative version of the policy. Thus, the evidence supports that the operative version of the policy is a version that includes a requirement for an Automatic Burglary Alarm in its Protective Safeguards Endorsement. Only the first, (ECF No. 11-1), and third, (ECF No. 33-1), versions of the policy fall into this category. The Court next determines whether there is any evidentiary support that one of these two versions of the policy is the operative one.

As mentioned, the first version of the policy includes Plaintiff Martin as the only named insured, (*see* ECF No. 11-1 at 3), while the third version of the policy includes Blazing 7's as the only named insured, (*see* ECF No. 33-1 at 94–95). The Court again highlights the sworn affidavit testimony that the third version of the policy, (ECF No. 33-1), is a "true and correct copy of the Policy," (ECF No. 33-2 at 1). There is no record evidence to support that the first version of the policy, which includes Plaintiff Martin as the named insured, is a true and correct copy of the policy. In fact, Plaintiffs offer no evidentiary support that any one of the versions of the policy is the operative version.

Based on evidence in the record, there is sworn affidavit testimony describing the third version of the insurance policy as a "true and correct copy" of the policy, and Plaintiffs admit in their original and Amended Complaints that they considered the operative version of the policy to include a requirement for an Automatic Burglary Alarm in its Protective Safeguards Endorsement. The third version of the policy is the only version that has clear evidentiary support in the record. Therefore, this Court concludes that the third version of the insurance policy, (ECF No. 33-1), is the official, operative version of the policy that was in effect on the date of the Incident (the "Official Policy"), and no reasonable juror could find otherwise. This Official Policy includes a General Change Endorsement listing Blazing 7's as the only named

insured and includes a requirement for an Automatic Burglary Alarm in its Protective Safeguards Endorsement. (*Id.* at 54, 94–95.)

Having identified the Official Policy, the Court next turns to resolve each of the claims remaining in this case.

### B. Plaintiff Martin's Claims against Defendant are Dismissed because Plaintiff Martin is Not a Proper Party.

Defendant argues that there is no coverage available to Plaintiff Martin under the Official Policy because he was not an insured on the policy at the time of the Incident, causing his breach of contract claim and UDTPA claim to fail as a matter of law. (ECF No. 44 at 10–11.) Under North Carolina law, "[t]he general rule is that one who is not a party to a contract may not maintain an action for its breach." *Matternes v. City of Winston-Salem*, 209 S.E.2d 481, 487 (N.C. 1974). And typically, where a "plaintiff is neither an insured nor in privity with the insurer . . . a private right of action under N.C.G.S. § 58-63[-]15 and N.C.G.S. § 75-1.1 may not be asserted by a third-party claimant against the insurer of an adverse party." *Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358, 365 (N.C. Ct. App. 1996) (alteration in original) (internal quotation marks omitted) (quoting *Wilson v. Wilson*, 468 S.E.2d 495, 497 (N.C. Ct. App. 1996) (stating that "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under N.C.G.S. § 75-1.1")). The exception to this rule emerges in the context of automobile accidents. *See id.* at 366 ("The injured party in an automobile accident is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party."); *see also Rmah v. USAA Cas. Ins. Co.*, 828 S.E.2d 674 (N.C. Ct. App. 2019) (unpublished) (citing *Nash. Hosps., Inc. v. State Farm Mut. Auto. Ins. Co.*, 803 S.E.2d 256, 263 (N.C. Ct. App. 2017)) ("[I]n the context of automobile accidents, an injured third party is

8

deemed to be in privity with a tortfeasor's insurance company if either (1) a judgment is entered against the tortfeasor; or (2) the injured party and the insurance company enter into a settlement agreement.").

Here, as the Court has recognized, the Official Policy includes a General Change Endorsement naming Blazing 7's as the only named insured of the Policy. (*See* ECF No. 33-1 at 94–95.) This General Change Endorsement became effective November 20, 2018, months before the Incident took place on or around October 6, 2019. (*See id.*) Thus, at the time that the Incident occurred, Plaintiff Martin was not a named insured under the Official Policy. Therefore, because Plaintiff Martin was not a party to the Official Policy, he lacks privity to bring a claim related to obligations of Defendant under this Policy. *See Rmah*, 828 S.E.2d 674 ("We wish to emphasize, however, that because Rmah was not a party to the insurance contract between USAA CIC and Mihans and has not obtained a judgment against Mihans, he lacks privity to bring a claim regarding any actions or omissions of USAA CIC arising under that insurance contract or occurring before the alleged settlement agreement was agreed to by Rmah and Wilson.").

Plaintiffs do not seem to provide any rebuttal to Defendant's argument that Plaintiff Martin is not covered by the Official Policy, aside from its contentions that there is ambiguity as to which version of the insurance policy applies—which this Court has now resolved. Thus, the Court concludes that the record supports that Plaintiff Martin is not a named insured on the Official Policy and is therefore not a proper party to this action. As a result, the Court dismisses all of Plaintiff Martin's claims against Nautilus.

Given the dismissal of all of Plaintiff Martin's claims, the breach of contract claim and UDTPA claim asserted by Blazing 7's are the only remaining claims of any Plaintiff in this action. The Court addresses each of these claims in turn.

### C. Blazing 7's Breach of Contract Claim: Blazing 7's Did Not Comply with the Condition Precedent of the Protective Safeguards Endorsement.

Defendant argues that Blazing 7's maintains no coverage under the Official Policy because it failed to comply with the condition set forth in the Protective Safeguards Endorsement. (ECF No. 44 at 11.) Blazing 7's contends, however, that the Official Policy grants Blazing 7's coverage for its "fire loss" even if it failed to comply with the condition set forth in the Protective Safeguards Endorsement. (ECF No. 49 at 8.)

In pertinent part, the Official Policy's Protective Safeguards Endorsement states:

A. The following is added to the Commercial Property Conditions:

BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS

1. As a condition of this insurance, you are required to maintain the protective devices and/or services listed in the Schedule above.

2. The protective safeguard(s) to which this endorsement applies are identified by the following symbols:

a. "BR-1" Automatic Burglary Alarm, protecting the entire building, that signals to:

(1) An outside central station; or
(2) A police station.

(ECF No. 33-1 at 54.) In the schedule of the Protective Safeguards Endorsement, under the column entitled "Protective Safeguards Symbols Applicable," the symbol "BR-1" is the only symbol listed. (*See id.*) As a result, Blazing 7's was required to maintain an Automatic Burglary Alarm that signals either to "[a]n outside central station" or "[a] police station." (*Id.*)

The Protective Safeguards Endorsement also contains an exclusion provision that reads as follows:

> B.    The following is added to the Exclusions section of the Causes of Loss – Special Form:
>
> BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS
>
> We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:
>
> > 1.    Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
> >
> > 2.    Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

(*Id.*)

North Carolina courts declare that "[a] condition precedent is a fact or event, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Chavis v. State Farm Fire & Cas. Co.*, 338 S.E.2d 787, 789–90 (N.C. Ct. App. 1986) (alteration in original) (internal quotation marks omitted) (quoting *Parrish Tire Co. v. Morefield*, 241 S.E.2d 353, 355 (N.C. Ct. App. 1978)), *rev'd on other grounds*, 346 S.E.2d 496 (N.C. 1986). To be eligible for recovery under the terms of an insurance policy, "the insured has the burden of proving compliance with all conditions precedent." *Yale v. Nat'l Indem. Co.*, 664 F.2d 406, 409 (4th Cir. 1981) (citing *Clemmons v. Nationwide Mut. Ins. Co.*, 148 S.E.2d 640, 643 (N.C. 1966)).

Defendant asserts that the failure of Blazing 7's to comply with the condition precedent set forth in the Protective Safeguards Endorsement provides a complete bar to the coverage

of Blazing 7's under the Official Policy. (*See* ECF No. 44 at 12.) In return, Blazing 7's argues that non-compliance with the condition precedent in the Protective Safeguards Endorsement does not suspend all coverage under the Official Policy, due to the existence of the exclusion provision of that Endorsement. (ECF No. 49 at 9.) Further, Blazing 7's argues that "[i]f the failure to have an automatic alarm system . . . suspended coverage of the entire policy," the language in the Endorsement must so state. (*Id.*)

The Court finds the arguments asserted by Blazing 7's unpersuasive. While Plaintiff is correct that "North Carolina courts interpret exclusionary clauses narrowly while broadly interpreting coverage clauses," (*id.*), North Carolina courts are also clear that a condition precedent in a policy must occur "before there is a right to immediate performance" or "before there is a breach of contract duty," *Chavis*, 338 S.E.2d at 789–90 (quoting *Parrish Tire Co.*, 241 S.E.2d at 355). Therefore, Blazing 7's was required to comply with all conditions precedent before any duty of Defendant to provide coverage under the Official Policy would arise. The Court also rejects the notion that the Protective Safeguards Endorsement needs to state that failure to have an Automatic Burglary Alarm results in a complete bar to coverage under the Official Policy—not having a burglary alarm naturally equates to a failure to maintain such a burglary alarm, which is the condition precedent that needed to be satisfied for the Policy to take effect.

Most importantly, the record reveals that Plaintiff has failed to meet its burden to prove compliance with the condition precedent in the Protective Safeguards Endorsement at the time of the Incident. In fact, the record demonstrates that Blazing 7's admits that it was not in compliance with the condition precedent at issue. The Amended Complaint alleges that "Plaintiffs' representatives acknowledged the Property did not have a proper burglary alarm

12

at the time of the robbery and that items stolen would not be covered." (ECF No. 11 ¶ 12.) Furthermore, in its Responses to Nautilus' Requests for Admissions, Blazing 7's "[a]dmitted" both "that at the time of the Incident, the Property was not monitored by a burglary system that signaled to an outside central station" and "that at the time of the Incident, the Property was not monitored by a burglary system that signaled to an outside police station." (ECF No. 44-1 ¶¶ 6–7.)

Therefore, due to Blazing 7's failure to comply with the condition precedent in the Protective Safeguards Endorsement, Nautilus has no obligation to provide coverage under the Official Policy.[3] The Court holds that Nautilus is entitled to summary judgment in its favor on the breach of contract claim asserted by Blazing 7's.

### D.    Blazing 7's UDTPA Claim: Defendant Provided a Prompt, Reasonable Explanation for the Denial of Plaintiffs' Coverage.

An insurer violates N.C. Gen. Stat. § 58-63-15(11)(n) when it "[f]ail[s] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." N.C. Gen. Stat. § 58-63-15(11)(n). In providing such an explanation, an insurer may not "hide the ball" or leave its insured to "connect the dots" by simply stating policy provisions and facts without "bridg[ing] the gap between policy and fact." *DENC, LLC v. Phila. Indem. Ins. Co.*, 32 F.4th 38, 51, 52 (4th Cir. 2022). "In order to establish a prima facie claim for unfair trade practices,

---

[3] The Court acknowledges that the Parties dispute the applicability of the exclusion in the Protective Safeguards Endorsement and whether the fire damage that took place on or around October 6, 2019, was "loss or damage caused by or resulting from" the burglary that took place on the same date. (ECF No. 33-1 at 54; *see* ECF Nos. 44 at 14–16; 49 at 8–11.) However, because the Court finds that Blazing 7's failed to comply with the condition precedent in the Protective Safeguards Endorsement of the Official Policy, it need not reach the issue of whether the exclusion applies and, consequently, need not reach the issue of whether the fire damage was "loss or damage caused by or resulting from" the burglary. (ECF No. 33-1 at 54.)

13

a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) (citation omitted).

Defendant contends that it provided a prompt, reasonable explanation for the denial of the claim, as "undisputed evidence shows that Plaintiffs have been aware since shortly after the Incident occurred that failure to comply with the Protective Safeguards Endorsement could preclude coverage." (ECF No. 44 at 16.) In response, Blazing 7's argues that certain statements made by an insurance investigator and adjuster retained by Defendant, as well as Defendant's issuance of the $10,000 check made payable to Blazing 7's, "caused Mr. Martin to believe that his claim would be covered." (ECF No. 49 at 12.) Resolution of this issue requires the Court to first recount the sequence of events in this case.

The Incident occurred on or around October 6, 2019. (ECF No. 11 ¶ 8.) Two days later, on October 8, 2019, Defendant issued a letter to Plaintiff Martin communicating that it "received a notice of loss" under the Official Policy and that the investigation of the matter had been assigned to "Vericlaim Inc. DBA Sedgwick." (ECF No. 49-6 at 2.) The October 8, 2019, letter also expressed that the named entity would contact Plaintiff Martin "shortly to look into the circumstances of this incident" and that "[t]his investigation [was] an essential part of getting the matter concluded in the shortest possible time frame." (*Id.*) At some point between October 8, 2019, and October 14, 2019, contact was made between Plaintiff Martin and Daniel Carter—the Sedgwick insurance investigator and adjuster retained by Defendant, (ECF No. 44-3 at 2)—at which point Mr. Carter informed Plaintiff Martin that he would receive a $10,000 "hold money" payment from Nautilus until Plaintiff Martin's claim was "paid out." (*See* ECF Nos. 49-5 at 68:4-14, 107:8–108:15; 44-1 at 5.) Shortly thereafter, on October

14

14, 2019, Defendant issued a $10,000 check made payable to Blazing 7's in which the top portion of the check noted "In Payment Of: Claim N000010107806." (ECF No. 49-7 at 2.)

On October 31, 2019, Defendant issued a letter to Plaintiff Martin communicating that the investigation of the Incident was "continu[ing] under a reservation o[f] rights."[4] (ECF No. 44-3 at 2.) This was the first communication from Nautilus to Plaintiff Martin that began connecting the facts of the situation to specific portions of the Official Policy, stating that Mr. Carter informed Nautilus "that [Plaintiff's] alarm system did not signal to an outside central station or a police station" and noting that Plaintiff "did not maintain the protective devices as described in the Burglary and Robbery Protective Safeguards endorsement." (*Id.*) However, this letter clearly expressed that Nautilus was "further investigating this loss to determine if coverage applie[d]" under the Policy and that Nautilus would notify Plaintiff Martin as to what action would be taken "[a]s soon as additional information [was] developed." (*Id.*) On December 5, 2019, Defendant issued the Denial Letter, denying Blazing 7's coverage for the claim. (ECF No. 44-5 at 2.)

An insurer's duty to offer a reasonable explanation attaches "in the first instance" of an insurer's opportunity to provide a "reasonable explanation . . . for denial of [the] claim." *DENC*, 32 F.4th at 51; N.C. Gen. Stat. § 58-63-15(11)(n). The "first instance" of Defendant's opportunity to provide a "reasonable explanation . . . for denial of [the] claim" did not occur until the December 5, 2019, Denial Letter—as it was through this specific correspondence that Blazing 7's was notified that its claim was denied. (ECF No. 44-5 at 2.)

---

[4] Plaintiff argues that, in the October 31, 2019, letter, "Defendant incorrectly states that it had previously notified Plaintiffs . . . in its prior October 8, 2019, letter . . . that the claim was being investigated under a reservation of rights." (ECF No. 49 at 7.) An examination of the letter by this Court reveals that while the October 8, 2019, letter does not indicate a reservation of rights, it does indicate the initiation of an investigation on that date. (*See* ECF No. 49-6 at 2.)

In support of its argument, Blazing 7's contends that the facts of the instant case are similar to those found in *DENC, LLC v. Phila. Indem. Ins. Co.* (ECF No. 49 at 13.) There, the Fourth Circuit affirmed a district court's summary judgment finding that an insurer violated N.C. Gen. Stat. § 58-63-15(11)(n) "by first granting coverage and then denying it in a confusing letter." *DENC*, 32 F.4th at 50–52. This Court, as it did in its Order on Defendant's Motion to Dismiss, outlines the facts of *DENC*. (*See* ECF No. 18 at 11–13.)

In *DENC*, partygoers in a student housing building who had gathered on a second-floor breezeway of the building began jumping, causing the breezeway to abruptly collapse. 32 F.4th at 44. Once the insured owner of the building submitted a claim for the collapsed breezeway to its insurer, the insurer advised its insured that it would be investigating the insured's claim under a reservation of rights and stated that it had "issued or [would] be issuing payment" to the insured. *Id.* at 50 (alteration in original) (internal quotation marks omitted). However, weeks after making these statements, the insurer denied the insured's claim in a denial letter that did not reference its earlier agreement to issue payment. *Id.* In the denial letter, the insurer expressed its conclusion that the breezeway damage was "the result of long-term water intrusion and deteriorated wood framing." (*Id.*) (internal quotation marks omitted).

The Fourth Circuit reiterated the reasoning of the district court in its decision, agreeing that "[n]othing in the denial letter link[ed] 'the basis in the insurance policy' for the denial 'to the facts,' as required by § 58-63-15(11)(n)." *Id.* at 50 (first alteration in original) (internal quotation marks omitted) (quoting *DENC, LLC v. Phila. Indem. Ins. Co.*, 426 F. Supp. 3d 151, 156 (M.D.N.C. 2019)). Though the denial letter listed and cited policy provisions that the insurer asserted prevented coverage, "none of the policy provisions . . . used the phrase 'water intrusion,'" "some of the provisions set forth in the letter were not even part of the policy"

16

and "[o]thers patently [didn't] apply to the breezeway collapse at issue, such as those citing flood or steam boilers" and even included "the wrong provision governing collapse." *Id.* at 50–51 (second alteration in original) (internal quotation marks omitted) (quoting *DENC*, 426 F. Supp. 3d at 156).

The facts here, however, are distinguishable from those in *DENC*. The Fourth Circuit's reasoning in *DENC* relied more heavily on the failure of the insurer's denial letter to explain how the provisions of the policy related to the facts. The same is not true in Defendant's December 5, 2019, Denial Letter to Blazing 7's—the Denial Letter here successfully "link[s] the basis in the insurance policy for the denial to the facts." *Id.* (internal quotation marks omitted) (quoting *DENC*, 426 F. Supp. 3d at 156). In Plaintiff's Amended Complaint, it alleges that Defendant denied its claim in letters that "acknowledg[ed] Plaintiffs' fire loss but at the same time us[ed] policy language related to a theft loss" and that "fail[ed] to provide, cite, and/or address any policy language specific to fire coverage, or exclusions, that would bar Plaintiffs' recovery for damage caused by fire." (ECF No. 11 ¶¶ 28(c)(ii), (iv).) Yet, a careful review of the record shows that, in Defendant's "first instance" of notifying Blazing 7's of denial—via the Denial Letter—Defendant explained the connection of the fire loss to the theft loss language that is present in the Official Policy.[5] The Denial Letter explains:

> Here, as previously discussed, Nautilus understands that the perpetrators set fire to the Property at the time of and as part of the theft. Thus, it is Nautilus's understanding and position that the loss or damage giving rise to this was caused by or resulting from a theft, and because Blazing 7's Skill Game failed to maintain an automatic burglary alarm signaling to an outside central station or police station, coverage for this Claim would further be excluded pursuant to

---

[5] The Court acknowledges that Plaintiff's allegations are true as it relates to Defendant's October 31, 2019, letter to Blazing 7's; in that letter, Defendant uses "fire loss" language, but doesn't cite or address any policy language specific to fire coverage, or exclusions, that would bar Plaintiff's recovery for damage caused by fire. (*See* ECF No. 44-3 at 2.) However, the Court reiterates that the focus of the Court's analysis at this stage of the proceedings is on Defendant's "first instance" of notifying Blazing 7's of the denial of its claim—the Denial Letter. *DENC*, 32 F.4th at 51.

17

the foregoing exclusion. Accordingly, Nautilus further denies coverage for this Claim based upon [the] exclusion in Section (B) of the Protective Safeguards Endorsement.

(ECF No. 44-5 at 5). This Court thus concludes that Defendant adequately explained in the Denial Letter its reasoning for the denial, "bridg[ing] the gap between policy and fact." *DENC*, 32 F.4th at 51.

The Court recognizes, however, that record evidence shows that Defendant remitted the $10,000 payment to Blazing 7's on October 14, 2019, over a month before the Denial Letter was issued. (ECF No. 49-7 at 2.) Though this could be perceived as an indication that Defendant would approve coverage of the claim, there is no evidence supporting that Defendant issued the payment because the claim was granted. In fact, undisputed evidence shows that Mr. Carter, in communication with Plaintiff Martin, "stated, 'Mr. Martin, the $10,000.00 is funds to hold you over until your claim is paid out sir.'" (ECF No. 44-1 at 5; *see also* ECF No. 49-5 at 68:4-14, 107:8–108:15.) Thus, rather than serving "as an initial payment towards the business personal property damaged by fire," as described by Blazing 7's in its Amended Complaint, (ECF No. 11 ¶ 28(c)(i)), the $10,000 served as a placeholder until the investigation of the claim was resolved. This was clearly not a payment on the claim as a result of Defendant's approval of coverage, especially when the claim had yet to be officially granted or denied at that point. The record supports that the Mr. Carter's language describing the purpose of the $10,000 payment differs significantly from the strong language in the insurer's statement in *DENC*, in which the insurer stated that it had "issued or [would] be issuing payment" to the insured. 32 F.4th at 50 (alteration in original) (internal quotation marks omitted). Further, the Court reiterates that the focus of the Fourth Circuit in *DENC* in determining that N.C. Gen. Stat. § 58-63-15(11)(n) was violated turned on the sufficiency of

18

the denial letter. Based on the sequence of events and totality of the evidence in this case, the Court concludes that Defendant provided both a prompt and "a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of [the] claim . . . ." N.C. Gen. Stat. § 58-63-15(11)(n).

Accordingly, the Court concludes as a matter of law that Plaintiff has failed to establish that Defendant committed a violation of N.C. Gen. Stat. § 58-63-15(11)(n). As such, the Court holds that Defendant is entitled to summary judgment in its favor on the UDTPA claim brought by Blazing 7's against Defendant.

### E. There Is a Genuine Issue of Material Fact regarding whether Blazing 7's was Unjustly Enriched by Defendant's $10,000 Payment.

Lastly, Defendant has submitted a counterclaim against Plaintiffs grounded in unjust enrichment. (ECF No. 22 at 13.) Defendant argues that Blazing 7's was unjustly enriched by the $10,000 payment made by Defendant to Blazing 7's because there is no coverage under the Official Policy. (ECF No. 44 at 19–20.)

A party must prove three elements to establish a claim for unjust enrichment: "(1) a measurable benefit was conferred on [another party], (2) the [other party] consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC*, 742 S.E.2d 555, 561 (N.C. Ct. App. 2013) (internal quotation marks omitted) (quoting *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, 712 S.E.2d 670, 677 (N.C. Ct. App. 2011)). A benefit is "conferred officiously" when it is "conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances." *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988). An unjust enrichment claim is neither in tort nor contract "but is described as a claim in quasi contract or a contract implied in law." *Id.* "The claim is not based on a promise but is imposed by law to prevent

an unjust enrichment." *Id.* Further, "the measure of damages for unjust enrichment is the reasonable value of the goods and services to the [party that accepted the benefit]." *Id.*

First, since it is undisputed that Defendant issued a $10,000 payment to Blazing 7's, (*see* ECF Nos. 41 at 12; 49-7 at 2), the Court finds that Defendant conferred a benefit to Blazing 7's. Second, the Court finds that Blazing 7's consciously accepted the $10,000, as there is no evidence in the record suggesting Blazing 7's rejected the payment. However, the third element that is required to successfully establish a claim for unjust enrichment is not present in this case.

There is a genuine issue of material fact regarding whether the $10,000 payment was gratuitous. Evidence in the record demonstrates that the purpose of the $10,000 payment was to "hold [Plaintiff Martin] over until [his] claim [was] paid out." (ECF No. 44-1 at 5 (internal quotation marks omitted); *see also* ECF No. 49-5 at 68:4-14, 107:8–108:15.) Within that stated purpose, as well as throughout the remainder of the record, there is no indication signaling any future return of the $10,000 payment or that anything was to be given to Defendant in exchange for the $10,000 payment. Furthermore, there is nothing in the record suggesting that Defendant was obligated to provide Blazing 7's with the $10,000 amount. The Court has no evidence before it that would suggest that Defendant provided the payment with an expectation to receive something in return, or that Defendant was required to provide the payment. Thus, there is a genuine issue of material fact as to whether the $10,000 payment was conferred gratuitously. The Court therefore concludes that Defendant has failed to establish the third element of unjust enrichment under North Carolina law.

As a result, the Court holds that Defendant is not entitled to summary judgment on its counterclaim of unjust enrichment.

Therefore, Defendant's motion for summary judgment will be granted in part and denied in part.

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 43), is **GRANTED IN PART AND DENIED IN PART**. More specifically, the Court dismisses Plaintiff Martin and any claims brought by him from this lawsuit; the Court **GRANTS** the motion as to the claim of Blazing 7's for breach of contract and the remaining UDTPA claim asserted by Blazing 7's for a violation of N.C. Gen. Stat. § 75-1.1 and § 58-63-15(11)(n), and these claims are **DISMISSED**; and the Court **DENIES** the motion as to Defendant's counterclaim of unjust enrichment.

This, the 10th day of July 2024.

/s/ Loretta C. Biggs
United States District Judge